In the Matter of ANTHONY HIRTZ, Appellant, v CAMERON HIRTZ, Respondent. [969 NYS2d 553]—

In a child custody proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Orange County (Currier Woods, J.), dated August 9, 2012, which, after a hearing, denied his petition to relocate to North Carolina with the parties' two children, modified a prior order dated July 20, 2009, entered upon the parties' consent, awarding them joint legal custody of the children with primary physical custody to him, so as to award the mother sole legal and physical custody of the children with visitation to him, and set forth a custodial plan that would take effect in the event that the parties decided, in the future, to reside in the same state.

Ordered that the order dated August 9, 2012, is modified, on the law, (1) by deleting the provision thereof modifying the order dated July 20, 2009, so as to award the mother sole legal custody of the children, and (2) by deleting the provision thereof setting forth a custodial plan that would take effect in the event that the parties decided, in the future, to reside in the same state; as so modified, the order is affirmed, without costs or disbursements.

In July 2009, the parties entered into a consent order pursuant to which they agreed to joint legal custody of their two chil-

dren, with primary physical custody to the father. The parties were divorced in December 2010, and the consent order was incorporated but not merged into the judgment of divorce. In 2012, the father, a pediatrician employed by the United States military, received military orders reassigning him from West Point in New York, to Fort Bragg in North Carolina, and filed the instant petition for permission to relocate to North Carolina with the parties' two children. Following a hearing, the Family Court denied the father's petition. At the same time, the court modified the parties' prior consent order so as to award the mother sole legal and physical custody of the children, with visitation to the father, and also set forth a custodial plan that would take effect in the event that the parties decided, in the future, to reside in the same state.

"When reviewing a custodial parent's request to relocate, the court's primary focus must be on the best interests of the child" (*Matter of Giraldo v Gomez*, 49 AD3d 645, 645 [2008]; *see Matter of Tropea v Tropea*, 87 NY2d 727, 739 [1996]; *Matter of Hamed v Hamed*, 88 AD3d 791, 791 [2011]; *Matter of Said v Said*, 61 AD3d 879, 881 [2009]). "Relocation may be allowed if the custodial parent demonstrates, by a preponderance of the evidence, that the proposed move is in the child's best interests" (*Matter of Steadman v Roumer*, 81 AD3d 653, 654 [2011]; *see Piccinini v Piccinini*, 103 AD3d 868, 869 [2013]). When evaluating whether a proposed move is in the child's best interest, "the factors to be considered include, but are not limited to, each parent's reasons for seeking or opposing the move, the quality of the relationships between the children and each parent, the impact of the move on the quantity and quality of the children's future contact with the noncustodial parent, the degree to which the lives of the custodial parent and the children may be enhanced economically, emotionally, and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the children through suitable visitation arrangements" (*Matter of Said v Said*, 61 AD3d at 881; *see Matter of Tropea v Tropea*, 87 NY2d at 740-741; *Matter of Retamozzo v Moyer*, 91 AD3d 957, 957-958 [2012]; *Matter of Steadman v Roumer*, 81 AD3d at 654). Although a multitude of factors may be considered, " 'the impact of the move on the relationship between the child and the noncustodial parent will remain a central concern' " (*Matter of Martino v Ramos*, 64 AD3d 657, 657-658 [2009], quoting *Matter of Tropea v Tropea*, 87 NY2d at 739). In relocation determinations, this Court's authority is as broad as that of the hearing court (*see Matter of Jennings v Yillah-Chow*, 84 AD3d 1376, 1377 [2011]). Thus, a relocation determination will not be permitted to stand unless it

is supported by a sound and substantial basis in the record (*see Matter of Clarke v Boertlein*, 82 AD3d 976, 977 [2011]).

Here, the record contains a sound and substantial basis for the Family Court's denial of the father's relocation petition (*see Matter of Tropea v Tropea*, 87 NY2d 727 [1996]; *Matter of Steadman v Roumer*, 81 AD3d at 654). Although moving would ensure that the children could continue their education at a school run by the Department of Defense, by remaining in New York with their mother, a civilian employee at West Point, the children could maintain the relationships they had formed with their friends, doctors, therapists, and church community. Moreover, although there was a possibility that they would not be able to continue at the Department of Defense schools, they could continue to participate in many of the extracurricular activities and after-school programs offered at West Point. The mother has been intimately involved in the children's lives since birth, and was their exclusive caregiver during the father's three overseas deployments. The record supports the Family Court's conclusion that the proposed relocation would have a negative impact on the children's relationship with the mother (*see Matter of Said v Said*, 61 AD3d at 881). Since the father is obligated to move, the denial of his petition to relocate with the children will inevitably have an impact on his ability to spend time with them. Nevertheless, the liberal visitation schedule, including extended visits during the summer and school vacations, along with the mother's representation that she will make sure that the children have as much access to the father as possible, which the Family Court credited, will allow for the continuation of a meaningful relationship between the children and the father (*see Matter of Jennings v Yillah-Chow*, 84 AD3d at 1377). In addition, the position of the attorney for the children is that relocation is not in the children's best interests, and that position, since it is not contradicted by the record, is entitled to some weight (*see Matter of Hamed v Hamed*, 88 AD3d at 792). Accordingly, since the father failed to demonstrate by a preponderance of the evidence that it was in the children's best interests to relocate with him, his petition was properly denied (*see Matter of Steadman v Roumer*, 81 AD3d at 654).

As is undisputed, a denial of the father's relocation petition, under the circumstances, necessitated a modification of the prior consent order, which awarded the parties joint legal custody with primary physical custody to the father. Indeed, the question of which party should have primary physical custody was, considering the father's obligatory move, inextricably tied to the relocation issue and the parties were clearly on notice

that primary physical custody would be awarded to the mother should the father's relocation petition be denied. However, the mother never requested a modification of the joint legal custody arrangement and the Family Court never indicated that legal custody was at issue. As the father had no notice that legal custody was at issue, the Family Court should not have modified the prior consent order, entered in July 2009, so as to award the mother sole legal custody (*see Matter of Joseph A. v Jaimy B.*, 81 AD3d 1219, 1220 [2011]; *Matter of Terry I. v Barbara H.*, 69 AD3d 1146, 1149 [2010]; *Matter of Adams v Bracci*, 61 AD3d 1065, 1067 [2009]; *see also Matter of Grant v Terry*, 104 AD3d 854, 854 [2013]; *Matter of Alexis AA. [Angela YY.—Bradley AA.]*, 93 AD3d 1090, 1091 [2012]; *cf. Matter of Mahoney v Regan*, 100 AD3d 1237, 1237-1238 [2012]; *Matter of Kowatch v Johnson*, 68 AD3d 1493, 1495 [2009]).

Similarly, because the parties only sought to resolve the custodial issues brought about by the father's obligatory move to North Carolina, and did not raise any issues regarding an appropriate custodial plan in the event that either party made a future move, it was improper for the Family Court to set forth a custodial plan that would take effect in the event that the parties decide, in the future, to reside in the same state. Of course, should there be a countervailing change of circumstance in the future, either party may, at that point, petition to modify the current custodial order (*see generally Friederwitzer v Friederwitzer*, 55 NY2d 89 [1982]). Eng, P.J., Rivera, Hall and Lott, JJ., concur.